UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES KLINGEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DERMA SCIENCES INC., STEPHEN T. WILLS, SRINI CONJEEVARAM, BRETT D. HEWLETT, SAMUEL E. NAVARRO, ROBERT G. MOUSSA, INTEGRA LIFESCIENCES HOLDINGS CORPORATION, AND INTEGRA DERMA, INC.,<br><br>Defendants. | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Charles Klingel ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and the public stockholders of Derma Sciences, Inc. ("Derma" or the "Company") against Derma's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(d)(4), and Rule 14D-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC"), and Sections 14(e) and 20(a). Specifically, Defendants solicit the tendering of stockholder shares in connection with the sale of the Company to Integra LifeSciences Holdings Corporation ("Parent") through Parent's wholly-owned subsidiary, Integra Derma, Inc. ("Merger Sub," and together with Parent, "Integra") through a recommendation statement that omits material facts necessary to make the statements therein not false or misleading. Stockholders

1

need this material information to decide whether to tender their shares or pursue their appraisal rights.

2.     On January 10, 2017, the Company announced that it had entered into a definitive agreement (the "Merger Agreement") by which Integra would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Derma common stock for $7.00 per share in cash, as well as Derma's Series A and Series B preferred stock for $32.00 and $48.00 per share in cash, respectively (the "Merger Consideration").  The Tender Offer, commenced on January 25, 2017, is set to expire on February 22, 2017.  The Proposed Transaction is valued at approximately $204 million.

3.     In connection with the commencement of the Tender Offer, on January 25, 2017, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the process leading to the Merger Agreement.  Without all material information Derma stockholders cannot make an informed decision to exchange their shares in the Tender Offer.  The failure to adequately disclose such material information constitutes a violation of §§ 14(d)(4), 14(e) and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision regarding tendering their shares in connection with the Proposed Transaction about whether to tender their shares.

4.     For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws.  Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under §§ 14(d), 14(e), and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Derma maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of Derma common stock.

9. Defendant Derma is a corporation organized and existing under the laws of the State of Delaware. The Company maintains its principal executive offices at 214 Carnegie Center,

3

Suite 300, Princeton, New Jersey 08540.  Derma common stock is traded on the NasdaqCM under the ticker symbol "DSCI."

10.     Defendant Stephen T. Wills ("Wills") has served as a director of Derma Sciences since May 2000 and as the interim Executive Chairman and Principal Executive officer since December 2015.

11.     Defendant Srini Conjeevaram ("Conjeevaram") has served as a director of Derma Sciences since May 1998.

12.     Defendant Brett D. Hewlett ("Hewlett") has served as a director of the Company since February 2010.

13.     Defendant Samuel E. Navarro ("Navarro") has served as a director of Derma since March 2015.

14.     Defendant Robert G. Moussa ("Moussa") has served as a director of the Company since May 2005.

15.     Defendants Wills, Conjeevaram, Hewlett, Navarro, and Moussa are collectively referred to as "Individual Defendants" and/or the "Board."

16.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

17.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action individually and as a class action on behalf of all holders of Derma stock who are being, and will be, harmed by Defendants' actions described herein (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

4

19. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

20. The Class is so numerous that joinder of all members is impracticable. According to the Merger Agreement, as of September 30, 2016, Derma had 28,269,225 shares of Common Stock outstanding. These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

21. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

    a. whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

    b. whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

22. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

23. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

25. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

26. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

27. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

**Company Background**

28. Derma is a life sciences company focused on advanced wound and burn care through tissue regeneration. The Company offers products to heal or manage chronic and hard-to-heal wounds, particularly from diabetes and poor vascular functioning.

29. The Company markets AMNIOEXCEL, an amniotic allograft membrane and AMNIOMATRIX, an amniotic allograft suspension in the larger skin-substitute market. Derma also offers MEDIHONEY, a line of honey-based dressings for the management of wounds and burns. TCC-EZ is another of the Company's products, a total contact casting system for diabetic foot ulcers. XTRASORB is a product for better management of wound exudate, and BIOGUARD, barrier protection against microbes and contaminants are additional products offered by the Company.

**The Sales Process**

30. During the third quarter of 2015, the Company began exploring potential strategic alternatives including the sale of the Company and, as part of that process, the Company engaged Greenhill & Co., LLC ("Greenhill") during the fourth quarter of 2015.

31. During its exploration of strategic alternatives, including stock-for-stock mergers and other merger transactions, the Company entered into confidentiality agreements with ten potentially interested parties. Two of those potential acquirers did not advance discussions beyond preliminary meetings and high-level due diligence, but the Company continued discussions with the eight remaining potential acquirers, including Parent.

32. Between April 19, 2016 and May 9, 2016, the Company received the following indications of interest:

   a. "Party A" proposed a stock-for-stock business combination transaction whereby the Company's stockholders would hold shares representing 81% of the equity of the combined entity and Party A's stockholders would hold shares representing 19% of the equity of the combined entity;

   b. "Party B" proposed to acquire the Company with the consideration payable in shares of Party B's common stock reflecting an implied price of $4.13 to $4.31 per share;

   c. "Party C" proposed to acquire the Company for $4.50 per Company share in cash;

   d. "Party D" proposed an acquisition of the Company structured as a share exchange with an exchange ratio reflecting a 35% premium to the then current equity value of the Company with an implied equity valuation of the Company at $114.3 million; and

  e. "Party E" proposed a stock-for-stock reverse merger whereby Party E would merge with and into the Company for an implied valuation of the Company at $3.50 to $3.65 per share.

33. Following the receipt of these indications of interest, the Board met and discussed them with Company management and Greenhill in order to steer ongoing negotiations. The Board determined that the terms of the proposals by Parties A, B, and C "did not represent an appropriate valuation for the Company and were not acceptable to the Derma Board." Thereafter "the Company stopped discussions with these parties and focused instead on the discussions with Party D and Party E." Notably, however, Party B's and Party C's offers, which reflected implied values of $4.13 to $4.31 per share and $4.50 per share, respectively, were higher than Party E's $3.50 to $3.65 per share offer. However, the Recommendation Statement provides no reasons for the Board's decision to favor Party E over Party B or Party C. The Recommendation Statement also fails to disclose the implied per share values of Party A's and Party D's stock-for-stock offers.

34. On June 17, 2016, the Company received a revised acquisition proposal from Party D for $4.70 per Company share. Despite this increased proposal from Party D, however, the Board determined not to continue discussions with Party D "due to the valuation of the Company proposed by Party D." At this point, Party D's submission represented the highest value to Derma stockholders.

35. On August 30, 2016, the Company delivered an indication of interest to Party E, reflecting a stock-for-stock reverse merger of Party E with and into the Company, with the Company's stockholders to own 24% of the combined entity and Party E's stockholders to own 76% of the combined entity. The Recommendation Statement does not disclose the implied value per share reflected by the Company's offer.

36. On October 1, 2016, Parent's President and CEO, Peter J. Arduini ("Arduini"), made first contact by calling Defendant Wills, and stated that Parent would like to engage in discussions with the Company about a potential transaction.

37. On October 10, 2017, Arduini proposed that the two enter into a confidentiality agreement to continue discussions. The next day, Maria Platsis ("Platsis"), Parent's Senior Vice President of Corporate Development, Parent's Senior Vice President of Corporate Development forwarded a form confidentiality agreement to Defendant Wills.

38. On October 13, 2016, the Company and Parent entered into the confidentiality agreement. The Recommendation Statement does not disclose whether any modifications were made to the form agreement sent by Ms. Platsis.

39. Throughout the entire process, "the Company entered into confidentiality agreements with ten potential strategic partners and began preliminary discussions with those parties." . While the Recommendation Statement states that none of these confidentiality agreements contained any provisions that would restrain the counterparties from making a topping bid to acquire the Company, other factors indicate otherwise.

40. The Recommendation Statement purports to disclose the terms of the confidentiality agreement between the Company and Parent, including the specific terms of the standstill provision, but the Recommendation Statement fails to disclose the existence of a don't-ask-don't-waive provision and the absence of a "fall away" provision. Instead, this information came to light by the exhibit to the Recommendation Statement, incorporated by reference from the Tender Offer documents filed by Parent.

41. A "don't-ask-don't-waive" standstill provision forbids the counterparty from making any unsolicited bids to acquire a company, and further forbids the counterparty to ask for

9

a waiver of the preclusion of unsolicited offers. In this manner, such provisions contractually forbid the counterparties from ever making topping bids to acquire a company once a sale process has concluded. The confidentiality agreement between Derma and Parent contained such a provision.

42. On October 13, 2016, the Company also entered into a confidentiality agreement with another party, "Party F," which had expressed a preliminary interest in a merger with the Company where the consideration would be payable in shares of stock. Also around this time, another interested party, "Party G," "approached the Company to explore transaction opportunities." However, the Recommendation Statement discloses that, in early November, "the Company decided to no longer pursue discussions with Party F or Party G as the discussions with Party F and Party G had not progressed beyond a preliminary indication of interest." The Recommendation Statement fails to disclose the terms and values indicated in those indications of interest, however.

43. On October 18, 2016, Party E provided a counteroffer to the Company's August 30 proposal and proposed a reverse merger in which the Company's stockholders would own 25% of the combined entity and Party E's stockholders would own 75% of the combined entity. Demonstrating its interest and eagerness to do a deal with the Company, on November 1, 2016, Party E submitted a more formal letter of intent reflecting substantially similar terms as its October 18 offer and which contemplated an implied equity valuation of the Company of between $140.7 million to $171.0 million. Party E also requested exclusivity from the Company in connection with its letter of intent.

44. On November 14, 2016, Parent submitted a preliminary indication of interest to acquire the Company at an implied price of between $6.00 to $6.50 per Company share with the

consideration to be payable 50% in cash and 50% in shares of Parent common stock. Parent similarly requested exclusivity from the Company to move forward with discussions.

45. Following a Board meeting discussing the ongoing process, Defendant Wills contacted Ms. Platsis, Parent's Senior Vice President of Corporate Development, to advise her that the Company would be willing to continue discussions and provide due diligence materials to Parent, but in order for the Derma Board to entertain granting exclusivity, Parent would need to increase its price to above $7.00 per Company share. The Company did not make a similar communication to Party E.

46. On November 23, 2016, the Company received a due diligence request list from Party E and began providing additional due diligence materials to Party E. In late November, Party E provided representatives from the Company access to a data room containing due diligence materials on Party E and the Company provided access to a data room containing due diligence materials on the Company to representatives from Party E.

47. On December 1, 2016, Parent delivered a revised indication of interest to acquire the Company for $6.60 to $7.00 per Company share, with between 50% and 100% of the consideration to be payable in Parent common stock, as well as a request for exclusivity to move forward. On December 6, 2016, Defendant Wills indicated to Ms. Platsis that he could recommend the Company grant exclusivity to Parent if Parent increased its offer to a range of $6.75 to $7.00 per Company share. This lowering of the threshold price signaled that Defendant Wills was now willing to accept a price lower. Again, Defendant Wills did not make a similar communication to Party E, which remained active and interested in a transaction with the Company.

48. On December 7, 2016, members of the Company's management team and representatives from Greenhill met with representatives from Party E and its advisors to review

information about the Company and Party E. Later that evening, the Company received a revised indication of interest from Parent reflecting an acquisition price of $6.75 to $7.00 per Company share, with the consideration to be paid in the form of 75% to 100% in shares of Parent common stock and cash for the remaining portion, if any. In addition, Parent included a draft of an exclusivity agreement that would grant Parent exclusivity through January 8, 2017 (the "Exclusivity Agreement").

49. Later that day, a representative from Greenhill contacted the financial advisor to Party E to apprise them of the new proposal and indicated that unless Party E was willing to increase the valuation of the Company implied by its last proposal, the Company planned to grant exclusivity to another party. The financial advisor for Party E said they would discuss the situation with Party E and would revert back.

50. On December 8, 2016, the Board met and determined to grant exclusivity with Parent until January 8, 2017. The next day, before hearing back from Party E on whether it would improve its offer, the Company entered into the Exclusivity Agreement with Parent and notified Party E that the Company had decided not to move forward in discussions with Party E.

51. The Company and Parent continued to negotiate the draft merger agreement and the price over the next month.

52. On January 5, 2017, Parent indicated that it would be willing to move forward with an all cash transaction for $7.00 per Company share and work towards a signing during the week of January 9th. The Board met the next day and confirmed that it was in favor of proceeding with an all cash transaction at $7.00 per Company share with a signing to occur as soon as practicable.

53. Between January 6, 2017 and January 10, 2017, representatives from the Company and Parent finalized the terms of the Merger Agreement. On January 10, 2017, the Board met and

Greenhill rendered its fairness opinion. The Board then approved the Merger Agreement and the Transaction, and the Merger Agreement was executed later that evening.

54. Before the opening of the U.S. stock markets on January 111, 2016, the parties issued a joint press release regarding the merger.

**The Proxy Omits Material Information**

55. On January 25, 2017, Derma filed the Recommendation Statement with the SEC in support of the Tender Offer commenced by Parent that same day. As alleged below and elsewhere herein, the Recommendation Statement omits material information that must be disclosed to Derma's stockholders to enable them to render an informed decision with respect to the Proposed Transaction.

56. The Recommendation Statement omits material information with respect to the process and events leading up to the Proposed Transaction, as well as the opinions and analyses of Derma's financial advisors and critical information concerning the Company's expected future value as a standalone entity as reflected in the Company's financial projections. This omitted information, if disclosed, would significantly alter the total mix of information available to Derma's stockholders

57. The Recommendation Statement fails to disclose material information concerning the Company's financial projections. First, the Recommendation Statement discloses several non-GAAP accounting metrics for both Base Case and Investment Case scenarios including Adjusted Earnings Before Interest, Tax, Depreciation and Amortization ("Adjusted EBITDA"), EBIT (defined as Adjusted EBITDA less depreciation and amortization, less equity-based compensation, less other income, and Unlevered Free Cash Flow. However, providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and

13

misleading. Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

58. Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Recommendation Statement that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

59. On May 17, 2016, the SEC's Division of Corporation Finance released updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures. One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts. The Recommendation Statement makes no effort to account for the failure to reconcile these non-GAAP measures to GAAP metrics.

60. Without disclosure of these reconciling metrics, the Recommendation Statement violates SEC regulations and materially misleads Derma stockholders.

61. The Recommendation Statement also fails to disclose the following Company projections for years 2016 through 2019: (i) depreciation and amortization; (ii) equity-based compensation; (iii) other income; (iv) interest expense/(income); (v) change in value of contingent consideration; (vi) taxes; (vii) capital expenditures; (viii) changes in net working capital; (ix) contingent payment payable in connection with the BioD, LLC acquisition. Without these measures, cherry-picking the disclosed projections materially misleads Derma stockholders, particularly where these measures are required to reconcile disclosed non-GAAP projections.

62. The Recommendation Statement also fails to disclose whether any of the confidentiality agreements entered into with the nine interested parties other than Parent contain standstill and/or don't-ask-don't-waive provisions, and if so, the significance of those provisions. Because the only disclosed confidentiality agreement (that between Derma and Parent) does contain such terms, it is likely that the other agreements also contain such provisions. Similarly, the fact that Section 5.3(c) of the Merger Agreement states that the "Company shall not terminate, amend, modify, waive or fail to enforce any provision of any 'standstill' or similar obligation" tends to indicate that such provisions are actually present and in effect between Derma and the confidentiality agreement counterparties.

63. In light of the fact that Parent's don't-ask-don't-waive standstill provision does not contain a "fall away" provision that would terminate the standstill provisions, it is likely that any don't-ask-don't-waive standstill provisions entered into with the other nine interested parties also do not contain a fall away provision. These terms in the confidentiality agreement between Derma and Parent indicate that the Recommendation Statement is materially misleading in that it states that none of the confidentiality agreements "currently restrict the applicable third party from making a proposal to acquire the Company."

64. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934**

64. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

66. As discussed above, Derma filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

67. Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

68. The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

69. In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

70. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

71. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

72. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II
### Claims Against All Defendants for Violations of § 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)

73. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

75. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

76. The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Recommendation Statement false and/or misleading.

77. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

78. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

79. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT III
### Claims Against All Defendants for Violations of § 20(a) of the 1934 Act Against the Individual Defendants

80. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

81. The Individual Defendants acted as controlling persons of Derma within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Derma and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the

18

Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

82.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

83.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Recommendation Statement.

84.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

85.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and her counsel as Class counsel;

19

(B) declaring that the Recommendation Statement is materially false or misleading;

(C) enjoining, preliminarily and permanently, the Proposed Transaction;

(D) in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E) directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 3, 2017

     s/ Donald J. Enright
Donald J. Enright
LEVI & KORSINSKY LLP
235 Main Street
Hackensack, NJ 07601
Tel: (973) 265-1600
Email: denright@zlk.com

*Attorney for Plaintiff*

Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: etripodi@zlk.com

*Counsel for Plaintiff*